Rel: August 23, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

———————————————

### CL-2023-0624, CL-2023-0625, CL-2023-0626, and CL-2023-0627

———————————————

#### K.K.

#### v.

#### Escambia County Department of Human Resources

#### Appeals from Escambia Juvenile Court

#### (JU-21-139.03, JU-21-140.03, JU-21-141.03, and JU-21-142.03)

———————————————

### CL-2023-0632, CL-2023-0633, and CL-2023-0634

———————————————

#### J.G.

#### v.

#### Escambia County Department of Human Resources

#### Appeals from Escambia Juvenile Court

CL-2023-0624, CL-2023-0625, Cl-2023-0626, CL-2023-627, Cl-2023-0632, CL-2023-0633, and CL-2023-0634

**(JU-21-139.03, JU-21-140.03, and JU-21-141.03)**

HANSON, Judge.

CL-2023-0624 -- AFFIRMED BY UNPUBLISHED MEMORANDUM.

CL-2023-0625 -- AFFIRMED BY UNPUBLISHED MEMORANDUM.

CL-2023-0626 -- AFFIRMED BY UNPUBLISHED MEMORANDUM.

CL-2023-0627 -- AFFIRMED BY UNPUBLISHED MEMORANDUM.

CL-2023-0632 -- AFFIRMED BY UNPUBLISHED MEMORANDUM.

CL-2023-0633 -- AFFIRMED BY UNPUBLISHED MEMORANDUM.

CL-2023-0634 -- AFFIRMED BY UNPUBLISHED MEMORANDUM.

Fridy, J., concurs.

Lewis, J., concurs in the result, without opinion.

Edwards, J., dissents, with opinion, which Moore, P.J., joins.

2

CL-2023-0624, CL-2023-0625, Cl-2023-0626, CL-2023-627, Cl-2023-0632, CL-2023-0633, and CL-2023-0634

EDWARDS, Judge, dissenting.

I respectfully dissent from the affirmance of the judgments entered by the Escambia Juvenile Court ("the juvenile court") terminating the parental rights of K.K. ("the mother") and J.G. ("the father") to their children, L.D.G., J.A.G., and A.L.G., and terminating the parental rights of the mother to her child, E.L.K. Although the mother argues that maintaining the status quo is a viable alternative to the termination of her parental rights, and although the father only briefly refers to the maintenance of the status quo in the conclusion section of his brief on appeal, I believe that the parents' arguments, however sparse, can also be construed as a challenge to the termination of their parental rights as not being in the best interests of the children because the record lacks evidence that the children would achieve permanency through adoption if parental rights were terminated. See T.W. v. Calhoun Cnty. Dep't of Hum. Res., [Ms. CL-2022-0694, June 2, 2023] ___ So. 3d ___ (Ala. Civ. App. 2023).

In T.W., this court explained that, "before proceeding to terminate the parental rights of the parents of special-needs children, a juvenile court must consider whether the children will likely achieve permanency

3

CL-2023-0624, CL-2023-0625, Cl-2023-0626, CL-2023-627, Cl-2023-0632, CL-2023-0633, and CL-2023-0634

through adoption." ___ So. 3d at ___; see also T.D.H. v. Mobile Cnty. Dep't of Hum. Res., [Ms. CL-2023-0033, Dec. 1, 2023] ___ So. 3d ___, ___ (Ala. Civ. App. 2023). Moreover, we cautioned in T.W. that, "[i]n order for the juvenile court to consider [whether a special-needs child will likely achieve permanency through adoption], it [is] incumbent upon [the Department of Human Resources] to present clear and convincing evidence of the viability of adoption so that the juvenile court [can] make an informed evaluation and decision." Id. at ___. Even in cases not involving children classified as "special needs," this court has stated that, "[i]f some less drastic alternative to termination of parental rights can be used that will simultaneously protect the children from parental harm and preserve the beneficial aspects of the family relationship, then a juvenile court must explore whether that alternative can be successfully employed instead of terminating parental rights." T.D.K. v. L.A.W., 78 So. 3d 1006, 1011 (Ala. Civ. App. 2011).

The record reflects that L.D.G., J.A.G., A.L.G., and E.L.K. ("the children") range in age from 15 to 9 years. Thus, the children qualify as "special-needs children," as that term is defined in Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-22-.06, which addresses adoption subsidies

4

offered to adoptive parents of children who are determined to have special needs. All four of the children are age five years or older, see Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-22-.06(2)(a)2.(iv), and, if the Escambia County Department of Human Resources ("DHR") is able to place the children "in the same [adoptive] home at the same time," r. 660-5-22-.06(2)(a)2.(v), as it is required to attempt, see 42 U.S.C. § 671(a)(31)(A), the children will also be "member[s] of a sibling group of two (2) or more being placed for adoption ...." r. 660-5-22-.06(2)(a)2.(v). In addition, the record reveals that, in an August 2022 individualized service plan ("ISP"), DHR indicated that the foster-care placement for A.L.G. and J.A.G. was designated as a "therapeutic foster home," as opposed to a traditional foster home, indicating that those two children suffered from "a DSM-IV psychiatric, emotional or behavioral diagnosis." See Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-28-.07(16)(e)(2). (describing "therapeutic foster care").[1] A.L.G. and J.A.G., therefore, each

---

[1]Rule 660-5-28-.07(16)(e)(2) provides:

"Therapeutic foster care is provided in a foster home that is equipped and trained to provide care for the emotionally and/or behaviorally disturbed children. It is the least restrictive community based care provided for emotionally/behaviorally disturbed children. Children

CL-2023-0624, CL-2023-0625, Cl-2023-0626, CL-2023-627, Cl-2023-0632, CL-2023-0633, and CL-2023-0634

also qualify as a "special needs child" under Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-22-.06(2)(a)2.(ii), which provides that a child is considered a special-needs child for purposes of an adoption subsidy when "[t]he child has a known emotional disturbance/behavioral issue that requires on-going treatment and that has been documented by a mental health professional."

My review of the record reveals that DHR presented no evidence indicating that the children were adoptable. Jessica Jackson, the social-service supervisor over foster care and ongoing services for DHR, testified that the permanency plans for the children were "adoption with no identified resource" and that DHR would, once the termination of parental rights was accomplished, "fill[] out all required paperwork for the state office to begin identifying a forever home." Other than that meager testimony, the record does not mention the future adoptive prospects of the children.

receiving therapeutic foster care must have a DSM-IV psychiatric, emotional or behavioral diagnosis and an identifiable special need related to that diagnosis that requires care beyond 'ordinary parental duties.'"

A review of the ISPs contained in the record indicates that, in July 2021, the children were placed together under a safety-plan agreement with safety-plan providers, T.B. and A.B.; that, in October 2021, L.D.G. and A.L.G. were placed in the home of foster parents, C.C. and E.C., and J.A.G. and E.L.K. were placed in the home of foster parents, S.B. and B.J.B.; and that, in March 2022, the children were placed together in the home of foster parent, D.S. Although the mother indicated in her testimony that, in February or March 2023, the children had been moved from the home of D.S. to a new foster home in which they were living at the time of the August 2023 trial, the record does not contain an ISP reflecting that change in placement. Nothing in the record reveals the reason that the children were moved from one foster home to another. At least three of the ISPs indicate that one or more of the children received counseling at various times; the most recent ISP in the record, dated August 28, 2022, indicates that the children were all receiving "school-based therapy" through a mental-health-care provider. Furthermore, some testimony in the record indicates that, at least at some point, J.A.G. was in a "facility" where he was attended by both a nurse and a therapist, indicating that he may have been either hospitalized or institutionalized.

CL-2023-0624, CL-2023-0625, Cl-2023-0626, CL-2023-627, Cl-2023-0632, CL-2023-0633, and CL-2023-0634

The children are unquestionably considered to be special-needs children under DHR's own regulations, yet DHR failed to present any evidence, much less clear and convincing evidence, indicating that adoption would be a likely outcome for any of them or that adoption would serve their best interests. We cannot affirm the termination-of-parental-rights judgments in the absence of such evidence. Accordingly, I must dissent.

Moore, P.J., concurs.